UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RODERICK I. CAMPBELL,          )
        Plaintiff              )
                              )
vs.                           )        CIVIL ACTION
                              )        NO. 03-11848-NG
GENERAL DYNAMICS GOVERNMENT )
SYSTEMS CORPORATION and        )
RICHARD SCHNORBUS,            )
        Defendants            )

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY
PROCEEDINGS PURSUANT TO THE DISPUTE RESOLUTION POLICY
and
MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES
AND FOR SANCTIONS, INCLUDING ATTORNEY FEES & COSTS,
FOR ASSERTING A FRIVOLOUS CLAIM OR DEFENSE**

**I.     Introduction.**

This is an action brought by the plaintiff, Roderick I. Campbell, under

Massachusetts General Laws, Chapter 151B, and the Americans With

Disabilities Act, 42 U.S.C.A. §§ 12101-12213, against his employer, General

Dynamics Government Systems Corporation ("General Dynamics"), and its

Human Resources Director, Richard Schnorbus, in which the plaintiff alleges that

he was discriminated against by being terminated because of his handicap, sleep

apnea.  In response to the plaintiff's Complaint filed with the Massachusetts

Commission Against Discrimination ("MCAD"); and now in the present action,

which General Dynamics removed from state court, General Dynamics has

insisted that the plaintiff is bound by its *ex post facto* dispute resolution process

("DRP"), which deprives him of his state and federal statutory rights and the

protection of the federal courts, without any signed agreement to arbitrate or

-2-

signed acknowledgment of his receipt of the policy.[1] The defendants admit the lack of any writing, but, in a procrustean application of contrary law, insist that by virtue of the plaintiff's opening an e-mail and not quitting - with the resulting loss of his income[2] and, most important for a disabled employee, his health insurance - he is nevertheless contractually bound.

The plaintiff opposes General Dynamic's unilateral substitution of its self-serving dispute resolution policy for his statutory right to a jury; contends that the defendants are duplicitous in claiming that a program which it created to serve its own purpose in reducing litigation costs, curtailing discovery and subverting the jury system is beneficial to its employees; and asserts that the defendants' brazen misrepresentation of law to extort the plaintiff into giving up his statutory rights[3] smacks of bad faith, for its affirmative defenses should be struck and for which sanctions should be imposed.

---

[1] General Dynamics DRP states that "the continuation of employment by an individual shall be deemed to be acceptance of the DRP" and that "[n]o signature shall be required for the Policy to be applicable." Defendant's Memorandum, p. 3, ¶ 8.

[2] It is assumed that if an employee quit over the DRP, General Dynamics would contest his or her application for unemployment with the disingenuous argument that forcing the employee to agree to the DRP was not an adverse job action, but a benign condition for continued employment to which the employee had unreasonably refused to agree. Compare the consequences of an employer going to a current employee and saying, "Sign this agreement to arbitrate or your fired." with, "Sign this agreement to arbitrate or we will consider you to have quit." In this case, however, the defendants have gone one step farther: "If you open this e-mail, you are considered to have received the DRP, read it and agreed to be bound by it, unless you quit."

[3] In an effort to deter the plaintiff from pursing his discrimination claim at the MCAD, the defendants insisted that a signed arbitration agreement was not required and threatened him with the loss of his rights to compensation if he did not abandon his claim and comply with its dispute resolution policy:

A signed agreement is not required. I will not debate this issue with you further. We will submit a position statement to the MCAD but your client will be precluded from receiving damages if he failed to utilize the DRP. C.Centomini. Exhibit 1.

## III. Statement of the Case.

The plaintiff suffers from sleep apnea, a recognized condition that can

disturb sleep and make it impossible to wake up in the morning, as well as cause

episodes of sleep during the day. It is treatable and the plaintiff was under the

care of a doctor. General Dynamics, so the plaintiff contends, was aware of his

condition and consistently gave him good reviews. At the time of his termination

on December 30, 2002, the plaintiff had been an employee of General Dynamics

for almost three years. Believing that his termination was due to his disability, on

May 13, 2003, the plaintiff filed a charge of discrimination against General

Dynamics and Richard Schnorbus with the MCAD. On July 17, 2003, the

Defendants filed their Position Statement with the MCAD, arguing, as they have

in this action, that the plaintiff's Complaint should be dismissed:

> **GDC4S** ["General Dynamics"] **has a mandatory dispute
> resolution program**. Although GDC4S has repeatedly offered this
> process to Complainant to resolve his dispute, Complainant has
> refused to mediate under the dispute resolution program. The U.S.
> Supreme Court has held that the Federal Arbitration Act applies to
> **mandatory employment arbitration agreements** requiring
> employees to abide by the terms of the employment arbitration
> **agreements**. Circuit City Stores, Inc. v. Adams, 532 U.S. 105
> (2001); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S.
> 20 (1991). The purpose of such **mandatory employment
> arbitration agreements** is, among other things, to avoid the costs
> of litigation. Circuit City, 532 U.S. **Because Complainant has
> refused to comply with the requirements of the program, he is
> precluded from receiving individual relief from the
> Commission**. (Bold face added for emphasis.)

-4-

Notably, while attempting to deprive the plaintiff of his right to submit his

complaint to the agencies[4] statutorily created to address them, General

Dynamics failed to mention that an employer imposed arbitration agreement is

"mandatory" only by virtue of its novel interpretation of cases that do not stand for

the proposition.[5]  At the end of the 90 day waiting period for removing the case to

superior court under M.G.L. c. 151B, the plaintiff filed a Complaint in Norfolk

Superior Court.  The defendants removed the plaintiff's action to federal Court.

## III. Argument

### A. Neither The Federal Arbitration Act Nor The Cases Allowing Its Application To Discrimination Claims Permit An Employer to Require Current Employees To Agree To A Dispute Resolution Policy That Deprives Them Of Their Statutory Rights Or Quit.

The controlling law is cited by the First Circuit Court of Appeals in its

recent decision, Intergen N.V. v. Eric F. Grina, Alstom (Switzerland) Limited, and

Alstom Power NV, 200 U.S. App. Lexis 19597 (September 22, 2003)[6]:

---

[4]A complaint filed with the MCAD is automatically filed with the Equal Employment Opportunity Commission ("EEOC") as well.

[5]  In Circuit City, 532 U.S. 105, 1221 S.Ct. 1302, 149 L.Ed.2d 234 (2001), a case cited multiple times by the defendants as supporting the enforcement of "mandatory" arbitration agreements, prior to his employment, the employee signed an application that included the following provision:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, exclusively by final and binding arbitration before a neutral Arbitrator.  By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and the law of tort.

[6]A copy of the Intergen decision is attached as Exhibit 2 for the Court's convenient reference.

> A party who attempts to compel arbitration must show that a valid
> agreement to arbitrate exists, that the movant is entitled to invoke
> the arbitration clause, and that the other party is bound by that
> clause. ... [A]rbitration is a matter of contract and a party cannot be
> required to submit to arbitration any dispute which he has not
> agreed to submit. [citations omitted]. We have interpreted th is
> precept to mean that "a party seeking to substitute an arbitral forum
> for a judicial forum must show at a bare minimum, that the
> protagonists have agreed to arbitrate some claims." McCarty v.
> Azure, 22 F.2d 353, 354-355 (1ˢᵗ. Cir. 1994). Id. p. 17.

In an argument that turns existing law on its head, General Dynamics cites

cases which required employers to obtain voluntarily signed agreements to

arbitrate discrimination claims after acknowledged delivery of the arbitration

policy for the proposition that an employer can unilaterally create a mandatory

arbitration policy, deliver it by e-mail and make opening the e-mail and continued

employment acceptance of the policy. [7] See. fn. 2.  General Dynamics has

offered two Supreme Court cases in support of its contention that a signed

agreement to arbitrate is not required: Gilmer v. Interstate/Johnson Lane Corp.,

500 U.S. 20 (1991) and Circuit City Stores, Inc. v. Adams, 532 US 105 (2001).

(Exhibit 2).  In Gilmer, as in this Honorable Court's decision of Rosenberg v.

Merrill Lynch, Pierce, Fenner and Smith, Inc. 170 F.3d 1 (1999), the plaintiff was

required to sign a New York Stock Exchange registration form prior to his

employment as a financial consultant.  Subsequently he brought a claim under

the Age Discrimination in Employment Act ("ADEA") and his employer sued to

---

[7]General Dynamics goes to great lengths to convince this Honorable Court that its DRP is beneficial, discussed infra, to show that it knows better than Congress what is good for its employees.  Apparently General Dynamics does not think its employees know what is good for them any more than their elected representatives, or it would let them decide for themselves.

-6-

enforce the arbitration provision.  The plaintiff opposed it on the ground that

arbitration was not a suitable forum for discrimination claims.  The Supreme

Court held that the Federal Arbitration Act, 9 U.S.C.S. 1, et seq., ("FAA") applies

to ADEA claims.  Similarly, in Circuit City, supra, see fn. 4., the plaintiff signed an

employment application that contained an arbitration provision.  The Supreme

Court held that the exclusionary language of Section 1 of the FAA did not

preclude its application to employment agreements.  Nowhere in Gilmer, supra,

or Circuit City, supra, does the Supreme Court hold or even consider the issue of

an employer's right to force its current employees to arbitrate discrimination

claims without a signed agreement.

 The defendants cite Akinnusotu v. Electric Boat Corp. and General

Dynamics Corp., (Defendant's Memorandum, Exhibit C) for their self-serving

premise that "GDGS urges the Court to let it continue to work through its

occasional workplace issues in an effective, non-judicial manner."[8]  However,

Akinnusotu also involves a signed agreement to be bound by the DRP[9] and a

signed form requesting arbitration:

---

[8] One wonders how General Dynamics reconciles its image as a concerned employer with its characterization of illegal discrimination, which has been found to be so onerous by both state and federal government that they have created special agencies to investigate it and specific legislation to punish it, as "occasional workplace issues" with which the courts do not need to be bothered.

[9] General Dynamics claims to have implemented the DRP by e-mail to its employees effective as of May 1, 2001 (Page 2 of Defendants' Memorandum), yet in the Akinnusotu case, in which General Dynamics is the defendant, the plaintiff's signed acknowledgment of the DRP is on October 5, 2002, five months later, leading to the conclusion that he was either a new hire or that General Dynamics has not uniformly used cyber-coercion to gain its employees' agreement.

-7-

On Oct. 5, 2001, Plaintiff signed a form acknowledging the DRP as the sole and exclusive avenue of redress for all covered claims. On Jan. 14, 2002, Plaintiff filed a form requesting arbitration which also described the DRP as the sole and exclusive avenue of redress for all covered claims. Id., page 2.

The defendants further argue that "[t]he existence of a written arbitration agreement is to be determined by application of general principles of state contracts law"[10] citing Rosenberg, supra, and that "[i]t is not necessary that the writing be signed by the parties", citing Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (1987). First, Genesco is not a discrimination case. It is a dispute between two sophisticated international business entities[11] over whether a clause requiring arbitration in Japan contained in various sales confirmation forms[12] is valid and enforceable in the United States. Second, as the Court noted, "Genesco received these forms without objection, and returned a number of them to Kakiuchi-Japan with the initials or signature of a high-ranking officer." Genesco, supra, p. 845. [emphasis added]. Third, and most importantly, the language quoted by the defendant, that "it is well established that a party may be

---

[10]   Whether state law controls agreements to arbitrate under the FAA, is questionable:

> If the federal statute in questions demands national uniformity, federal common law provides the determinative rules of decision. Intergen, supra, p.19.

[11]   Genesco, a manufacturer of tailored clothing, brought a damage action against two of its principal fabric suppliers, alleging that they had conspired with one of its high-ranking employees to supply it with over-priced, damaged and unsuitable goods. Intergen, supra, p. 843.

[12]   On the back of the form is set forth a comprehensive list of terms and conditions including one that: "All claims and disputes of whatever nature arising under this contract ... shall be referred to [arbitration in Japan before the Japan Commercial Arbitration Association]." Intergen, supra, p. 845. [bracketed text in original].

-8-

bound by an agreement to arbitrate even absent a signature," Genesco, supra,

p. 846, is deliberately taken out of context and offered for a proposition for which

it does not stand. Genesco argued, albeit unsuccessfully, that because not all of

the sales confirmation forms were signed, it was not bound by the arbitration

clause, and that, even those forms which were signed were not binding, because

the signatures were not specific to the arbitration clause. The actual holding, in

the context of the dispute, was: given that these were two sophisticated

business entities with equal bargaining power that entered into an arms-length

commercial transaction; given that arbitration clauses are standard in the textile

industry, so that its inclusion in the form should come as no surprise to Genesco;

and given that Genesco did sign sales confirmation forms in its usual and long

course of dealings with Kakiuchi, the arbitration clause was valid and

enforceable.[13] Genesco, supra, does not stand for the proposition that an

unsigned agreement which deprives employees of a remedial statutory right is

---

[13]      Under general contract principles a party is bound by the
          provisions of a contract he signs, unless he can show
          circumstances that would relive him of that obligation. Here the
          district court found that Genesco was an experienced textile
          concern with economic power equal to that of Kakiuchi-Japan. It
          also found no impediment to the validity of the agreement. To
          the contrary, the widespread use of arbitration clauses in the
          textile industry puts a contracting party, like Genesco, on notice
          that its agreements probably contains such clauses [citation
          omitted]. Thus, the district court properly concluded that
          Genesco was bound to arbitrate disputes arising under the
          signed sales confirmation forms. Genesco does not contest
          these findings, but claims instead that it never specifically agreed
          to the arbitration clause. Such misapprehends our inquiry. We
          focus not on whether there was subjective agreement as to each
          clause in the contract, but on whether there was an objective
          agreement with respect to the entire contrct. [citation omitted.]
          Genesco, p. 846.

-9-

valid when obtained by economic duress and the disparity between the present case and Genesco demonstrates General Dynamics bad faith.

In summary, contrary to all of the cases cited by the defendants, the plaintiff never signed any document and the defendants' claim that "there is a written agreement to arbitrate" (P.6 of Defendant's Memorandum) is intentionally misleading.[14]

### B. General Dynamics Can Not Use A Non-Judicial Forum To Deprive Its Employees Of Their Statutory Right To Sue For Discrimination.

General Dynamics contends that, because it has proliferated policies professing its condemnation of discrimination - which it prominently offers as exhibits to its motion and which are, for the most part, irrelevant to the plaintiff's handicap discrimination claim - it is a good employer and therefore its motives for or means of depriving its employees of statutorily protected rights should not be questioned.[15]  State and federal law already prohibits discrimination and the mere recitation of a corporate employer's commitment is neither a shield that protects it from employees' claims nor a license to thwart their efforts to seek redress with the state and federal agencies created for that purpose or to prevent them from exercising their right to a trial by jury.

---

[14]There may be a form that would be an agreement to arbitrate when signed by an employee, but as, Judge Selya of the First Circuit Court of Appeals wrote in the recent decision of Intergen N.V. v. Eric F. Grina, Alstom (Switzerland) Limited, and Alstom Power NV,

> … the obvious bar to arbitrability is the abecedarian tenet that a party cannot be forced to arbitrate if it has not agreed to do so."

[15]General Dynamics boasts in its Memorandum that 13 employees have participated in the DRP so far, although it fails to mention how many were new hires who actually signed the DRP, and how many were bullied into believing "[a] signed agreement is not required" and that they" will be precluded from receiving damages" if they do not use the DRP.  See Exhibit 1.

-10-

Moreover, no matter how cleverly General Dynamics has crafted its DRP to duplicate an employee's statutory rights, it is only common sense that a corporate employer would not go to the time, trouble and expense of doing so and the additional time, trouble and expense of litigating its right to do so, unless it believed that it was to its benefit to do so. Arbitration may be less expensive - if you are an employer paying large law firms substantial hourly fees to defend you. Plaintiff's usually are represented on a contingency fee basis. The only substantial cost of litigation to the plaintiff is discovery and experts, which would be necessary regardless of the forum. Discovery may be available in arbitration, but it is significantly curtailed and significantly less effective when monitored by an arbitrator than by a court. The claimant's rights under state and federal law may also be preserved in arbitration, but the substitution of a professional panel of arbitrators for a jury of peers deprives the claimant of the understanding and sensitivity of average working people. Most importantly, General Dynamics position would allow every employer to pre-empt its employees' right of redress to the statutorily created agencies and the judicial forum expressly created by the states and Congress by sending out an e-mail.

Finally, General Dynamics argues that the DRP was incorporated into its employee handbook and into the plaintiff's at-will employment contract. Leaving aside the oxymoron of an at-will employee having a contract and the almost certainty that General Dynamics's employee handbook disavows that it creates any contractual rights, where the documents appear is irrelevant to the issue that the law requires a signed agreement to arbitrate.

-11-

**IV. General Dynamics' Attempts To Prevent The Plaintiff From Exercising His Statutory Rights Are Frivolous, Dilatory And Not In Good Faith, For Which Sanctions, Including An Award Of Attorney's Fees And Costs Should Be Imposed.**

None of the cases cited by the defendants support their motion to compel arbitration. Nor do any of their arguments as to how benign is the DRP or how benevolent is the corporation justify its implementation by fiat. For the foregoing reasons, the plaintiff respectfully submits that the defendants' attempts to deter the plaintiff from pursing his statutory rights are frivolous, dilatory and not made in good faith, for which he asks this Honorable Court for sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure and to M.G.L. c. 231, §6F, including attorney's fees and costs, and for such other relief as this Honorable Court shall deem fair and just.

**V. Conclusion.**

WHEREFORE, the plaintiff opposes the defendants' motion to compel arbitration and asks this Honorable Court to dismiss the defendants' affirmative defenses and for sanctions, including attorney's fees and costs, and for such other relief as this Honorable Court shall deem fair and just.

Respectfully submitted,

The plaintiff,
By his attorneys,

John N. Lewis, BBO # 298520
Lawrence R. Mehl, BBO# 566235
JOHN N. LEWIS & ASSOCIATES
21 Merchants Row, 5th Floor
Boston, MA 02109
(617) 523-0777

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served on the attorney of record for each party and/or on each party appearing *pro se* by mail on  11/17/03 .