UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RODERICK I. CAMPBELL,<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>)<br>) |
| GENERAL DYNAMICS GOVERNMENT<br>SYSTEMS CORPORATION and RICHARD<br>SCHNORBUS,<br>    Defendants | )<br>)<br>)<br>) |

FILED
IN OFFICE.

2003 DEC -4  A 11: 25

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION
NO. 03-11848-NG

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION TO
STAY PROCEEDINGS AND COMPEL SUBMISSION OF THE DISPUTE
TO GENERAL DYNAMICS' DISPUTE RESOLUTION PROGRAM**

**I. The Cases Cited By The Defendants Do Not Hold Or Stand For the
Proposition That An Employer Can Deprive Its Employees Of A Federal
Statutory Remedial Right By The Click Of A Mouse.**

The defendants persist in offering this Honorable Court generic cases

which approve arbitration as an alternative to litigation under various federal anti-

discrimination statutes when a written agreement to arbitrate has been physically

delivered to the employee.  As the defendants know and as they have

persistently ignored, the issue is not <u>whether</u> the Federal Arbitration Act, 9

U.S.C.A §§1-16, ("FAA") applies to discrimination cases, but <u>how</u> an employer

goes about obtaining its employees' knowing and voluntary consent.  See

<u>Rosenberg v. Merrill Lynch, Pierce, Fenner and Smith, Inc.</u> ,170 F.3d 1 (1999).

Not one of the cases previously or subsequently cited , even those in which

General Dynamics is the defendant, involve delivery of the arbitration agreement

by e-mail.  The previous cases have been discussed in the plaintiff's original

-2-

memorandum, incorporated by reference herein.  As to the additional cases cited

by the defendants, in summary, every one of them involves the physical delivery

and acknowledgment by the plaintiff of a <u>written</u>[1] arbitration agreement.  In

particular:

Hightower v. GMRI, Inc., 272 F. 3d 239 (4th Cir. 2001).  The employee did

not dispute that he received a written copy of the DRP and actually participated

in the mediation stage, but rather argued that the DRP was not binding and

refused to arbitrate. The Court found that the plaintiff had actually received a

written copy of the DRP:

> [I]t is undisputed that Hightower attended the August meeting and
> <u>signed</u> an attendance sheet <u>acknowledging receipt</u> of GMRI's DRP
> materials.  The top of the form that Hightower <u>signed</u> stated: "I have
> attended a DRP meeting and have received the information in
> regards to the DRP." <u>Id.</u> 241. [emphasis added].

Howard v. Oakwood Homes Corp., 516 S.E. 2d. 879 (N.C. App. 199)

<u>review denied</u> 539 S.E. 2d 288 (N.C. 2000).  The employee did not dispute that

she received a written copy of the DRP, but rather argued that the DRP was not

binding.  The Court found that she had actually received a written copy of the

DRP:

---

[1]     [F]or arbitration of future disputes, section 2 [of the FAA] requires
        "[a] written *provision*" in "a contract." 9 U.S.C. §2 9 (emphasis
        added).  Language from the Tenth Circuit supports such an
        interpretation:

> Decisions under the Federal Arbitration Act ... have held
> it not necessary that there be a simple integrated writing
> or that a party sign the writing containing the arbitration
> clause.  All that is required is that the arbitration provision
> be in writing.

Dirkin v. CIGNA Property & Casualty Corp., 942 F.Supp. 481, 487 (D. Kan.1996).

-3-

Defendant mailed to plaintiff's home on 1 April 1997 a copy of the DRP as well as a memorandum regarding the requirements and effective date of the program.  On 7 April 1997 defendant notified employees of the impending implementation, as well as a schedule of meetings where employees could learn and ask questions about the DRP.  Plaintiff again received a copy of the DRP by mail on 24 June 1997 accompanied by a letter from Mc. Macksood informing he that her prior employment dispute had been handled pursuant to the terms of the DRP.  Moreover, plaintiff in a complaint [presumably <u>signed</u> by or on behalf of the plaintiff] filed with the Equal Employment Opportunities Commission <u>acknowledged</u> <u>existence of the DRP</u> agreement and that recission of her initial termination occurred as a result of DRP procedures.  <u>Id</u>. 121. [emphasis added].

<u>Reese v. Commercial Credit Corp</u>. 955 F.Supp. 567 (D.S.C. 1997).  The employee did not dispute that he received a written copy of the Arbitration Policy, but argued that he was misled into believing that it was not mandatory by the paragraph on the first page that reaffirmed the at-will nature of the employment relationship.  The Court found that "no reasonable person could conclude that this paragraph somehow negates the mandatory nature of the Arbitration Policy, *Id.*, 570, and  that the employee had actually received a written copy of the DRP, which was both included in the employee handbook and mailed to him.

<u>Dirkin v. CIGNA Property & Casualty Co</u>., 942 F. Supp. 481 (D. Kan. 1996).  The employee did not dispute that she actually received a written copy of the DRP, but argued variously that the FAA did not apply to her employment contract and that the contract was not in writing.  The Court held that she received a written copy of the DRP at a meeting she attended and that there did not need to be a written contract to satisfy the FAA, only a written provision.  See fn. 1, *supra*.

-4-

Cole v. Halliburton Co., 2000 WL 1531614, 6 Wage & Hour Cas. 2d (BNA) 990 (W.D. Okla. 2000).  The employee did not dispute that he received some of the information, but rather argued that the burden was on the employer to prove his receipt of the complete policy.  The employer arranged for a professional mailing service to send the initial information concerning the Program to all of its employees and to send a second mailing a few months later.  The Court held that, even if he didn't receive all of the information, of which it was skeptical, the written materials he acknowledged receiving were sufficient to provide him with actual notice.

Van Slyke v. Commercial Credit Corp., 1195 WL 76399, 14 A.D.D. 201 (N.D.N.Y. 1995).  The employee did not dispute that she received the policy or that she wass bound by them, but rather argued that her employer should have initiated arbitration within the policy's one year statute of limitations.  The Court found that "there is no disagreement that the parties had an agreement to arbitrate employment disputes," Id., and that the issue of the statute of limitations should be submitted to the arbitrator.

## II. Virtual Delivery Over A Computer Network Is Not Actual Delivery Of A Written Document Within the Meaning Of The Federal Arbitration Act Or The Law of Cyber Contracts.

In all of case cited by the defendants, it was undisputed that the plaintiff physically received a written copy of the dispute resolution policy.  In all of the previously cited cases,[2] the plaintiff signed a written arbitration agreement.  In

---

[2] Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991); Circuit City, 532 U.S. 105, 1221 S.Ct. 1302, 149 L.Ed.2d 234

five of the new cases cited by the defendants,[3] the plaintiff did not dispute physically receiving a written copy of the dispute resolution policy and in the sixth, the plaintiff admitted to physically receiving a significant portion of the dispute resolution policy.  Not one court has gone where the defendants now ask this court to go, the approval of intra-company e-mail as a means for the delivery of important documents that deprive an employee of a federal statutory remedial right.  It does not matter whether DRP is good, bad or indifferent.  Knowing and voluntary assent is the *sine qua none* of a binding agreement to arbitrate.  See Rosenberg, *supra*.

The FAA requires that the arbitration provision be in *writing*. Dirkin, *supra*, fn. 1. The defendants admit that the arbitration provision was an *attachment* to its e-mail.  It is, in computer jargon, virtual reality, and does not actually exist until the attachment is opened.  Even then, it is only an ephemeral electronic image and not in a *writing*, as that term has been traditionally used, until it is printed. There is no evidence offered by the defendants that the plaintiff ever opened the attachment or printed the DRP.  To the contrary, in his Affidavit, the plaintiff states he routinely received numerous company-wide missives, which he could recognize from the header, among the 10 to 100 e-mails he received daily, and paid no attention to them.

_____

(2001); Rosenberg v. Merrill Lynch, Pierce, Fenner and Smith, Inc. 170 F.3d 1 (1999); Akinnusotu v. Electric Boat Corp. and General Dynamics Corp.

[3]Hightower, Howard, Reese, Dirkin and Van Slyke.

-6-

In <u>Specht, et al., individually and on behalf of all similarly situated</u>

<u>Plaintiffs-Appellees v. Netscape Communications Corp and America Online, Inc.</u>,

306 F.3d 17 (2002), the Second Circuit analyzed arbitration agreements in cyber-

contracts.  A copy of the decision is attached for the Court's convenient

reference.  In that case, the plaintiffs were users of free software which was

downloaded from the internet and which act, the providers contended, bound the

users to the software license agreement, which included an arbitration provision.

The downloaded program included "spyware," which clandestinely sent personal

information back to the providers, which the plaintiffs alleged was an invasion of

their privacy.  Pursuant to the arbitration provision included in the software

license agreement, the providers moved to stay the District Court proceedings

and to compel arbitration. The Court found that arbitration agreement was not

enforceable:[4]

> Arbitration agreements are no exception to the requirement of
> manifestation of assent. "This principle of knowing consent applies
> with particular force to provisions for arbitration. [citation omitted].
> Clarity and conspicuousness of arbitration terms are important in
> securing informed assent." If a party wishes to bind in writing
> another to an agreement to arbitrate future disputes, such purpose
> should be accomplished in a way that each party to the
> arrangement will fully and clearly comprehend that the agreement
> to arbitrate exists and binds the parties thereto." [citation omitted].
> <u>Id.</u> 32.

GD could have used the same method of physically mailing the DRP that the

other employers cited used.  Instead, as a cost saving method, it spammed its

---

[4]The District Court applied California contract law, as the dispute did not arise under the
FAA. Accord <u>Rosenberg</u>, *supra*, and <u>Circuit City</u>, *supra*.

-7-

employees.  Admittedly, nothing was done to distinguish this e-mail from the many other insignificant company mass mailings that the plaintiff regularly received; no meetings were held about its implementation or import; and no provision was made for acknowledgment or receipt in any form.  Instead, the defendant's allegedly kept an in-house log of who opened the e-mail and argue that by clicking on it without more, the employees were bound to read it and agree to it.  The Court in Specht rejected that argument as, the plaintiff respectfully submits, should this Honorable Court.

Respectfully submitted,

The plaintiff,
By his attorneys,

John N. Lewis
BBO# 298520
Lawrence R. Mehl
BBO# 566235
JOHN N. LEWIS & ASSOCIATES
21 Merchants Row
Boston, MA 02109
(617) 523-0777

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served on the attorney of record for for each party and/or on each party appearing pro se by mail on 12/9/03.